Good morning. May it please the Court, Jonathan Libby appearing on behalf of Appellant Daniel Apodaca. Your Honors, imposition of lifetime supervision in this case was both procedurally and substantively unreasonable. Unless the Court is in questions with respect to the procedural reasonableness argument, I want to focus on substantive reasonableness. And here, Your Honors, there is simply nothing in this record to justify a lifetime term of supervision. Certainly nothing that complies with the parsimony principle of the 3553A. Is there a guideline recommendation as to the length of time for the supervision? There is a policy statement within the guidelines that says that in sex offense cases, lifetime supervision is recommended. And this comes within the definition of sex offense cases? It does. So the district judge here is abiding by that policy recommendation? Well, I mean, obviously, it's not a mandatory requirement here that the Court impose lifetime supervision. And unfortunately, what appears in this case is that the government, the probation officer, and the Court treated the policy statement almost as if it's a mandatory requirement. But it's not. Certainly, lifetime supervision is permissible, but it still has to be justified. And what's our standard of review of what the district court did on this? Well, in order to find that it's substantively unreasonable, it's whether this Court finds there's a definite and firm conviction that the district court committed a clear error of judgment in weighing the various factors on the 3553A. Yeah. I mean, I read the entire sentencing transcript, and it went on for quite some time, as you know. And the district judge was very careful, very troubled, indeed, almost by the prosecution itself. The actual incarceration sentence is way below guidelines. That's right. And at least as I read it, there's a hint from the district judge that, well, come on back and ask for modification of the supervision after a little bit. Well, here's the problem, of course, with that. It reverses the burden. At this point at the time of sentencing, the government has the burden of establishing why lifetime supervision is... Well, I understand why you don't want that. But as I read that transcript, this judge was being very thoughtful and very careful. No dispute about that. No dispute. Judge Pregerson certainly was looking at this case very carefully. You know, why don't you wait like a year or so and go back in and ask Judge Pregerson to modify it? Well, that's certainly something we could do. But it's not something we should have to do. Because, again... Well, except that the guideline does recommend it. And so, you know, following... I mean, there's not error in deciding that under the circumstances of this case you give less incarceration. I mean, I can almost put myself in Judge Pregerson's position on this, right? Give less of a period of incarceration. Let the... Mr. Apodaca demonstrate that he's, you know, on the right path or back to the right path of, you know... I mean, he seems to be otherwise an upstanding individual. Let him demonstrate it and then come back in. It seems very reasonable to me. Sure. But what I... What the court did here was simply essentially say lifetime supervision is the presumptive sentence. And, of course, we don't have presumptive sentences. But that's what the court did here. It said, look, it's just a way of saying let's be really safe and careful. And that's... It's certainly reasonable to believe that, but is that a justification for imposing lifetime supervision? We submit it's not. That the court has to have... There needs to be something in the record to justify lifetime supervision. The problem is with sex offense cases. Sex offense cases are different, you know. And what Congress has said when it imposed lifetime supervision, when it established lifetime supervision for sex offense cases, it says, look, sex offense cases are differently and courts need to look at them individually and based on the facts in an individual case determine whether or not lifetime supervision or something less than that is the appropriate sentence. Here, I don't believe Judge Pregerson did that. What the court did was said, look, lifetime supervision is authorized. I'm just going to impose that just to be on the safe side. And, you know, if down the road you want to come back, you know, I'll then reconsider my decision, of course, on a very different burden where it's... But if what's in Judge Pregerson's head is the following, then maybe what he did was the only way to accomplish it. So if what's in his head is the following, he thinks, you know, the chance of recidivism in these cases, no contact, child porn, viewing only cases, the chances of recidivism is fairly low. But I don't want to have a five-year supervision period if it turns out that this is a recidivist because then I'm stuck. Well, but the court isn't stuck because, of course, if during that five-year period Mr. Apodaca were to violate his term of supervised release, he would be violated. He would be sentenced on that. And the court could then impose an additional term of supervision beyond that. The court could extend the period of supervision. In fact, the government has the right to come back during the period of five years or whatever term it is and also ask the court to extend the term of supervision. I misstated. He imposes a five-year period. At year five and a half, we reoffend. Well, we've got a brand-new prosecution. That's right. And maybe we never would have had the problem if he had been supervised. Maybe, you know, after five years, there are signs. I mean, I'm sympathetic to what Judge Pregnison is trying to do here. He wants to sort of let this ride a little bit, see what it looks like some years down the road. You know, Your Honor, that would be nice in every case. And that's the point. Yes, that's a nice thing to do. It's something that I understand would be helpful to the court in every single case, sex offense case, non-sex offense case. It doesn't matter. It would be helpful. But that's not the issue. The issue is whether lifetime supervision was sufficient but not greater than necessary under the facts of this case. And based on the findings that the court made, that there is a low risk of recidivism, that, you know, this is a very unusual case where his conduct falls on the lower end of the spectrum, all of those factors suggest something less than lifetime supervision. And if it doesn't suggest something less than lifetime supervision, then, in fact, we're saying lifetime supervision is the presumptive sentence in every sex offense case, whether it's a violent rape of a child or simply possession of child pornography. And there's supposed to be a difference there. We submit the Court did not make that distinction. And with that, I'll reserve the balance. All right. May it please the Court. Stephanie Christensen on behalf of the United States. I think the question in this case with regard to the lifetime period of supervised release was whether or not Judge Pegersen had discretion to pair a very low term of incarceration, some four years below even the low end of the guidelines, with a very lengthy term of supervised release. And I think the answer is yes. Judge Pegersen did not abuse his discretion, and there's a number of reasons why. As Judge Fletcher already pointed out, this sentence, in terms of a lifetime period, is within the guidelines. In addition, there are enough facts here that really warrant concern for Daniel Apodaca and what he will do once released from incarceration. I think first we have to look at the length of time and the degree of his collection of child pornography in this case. What we know from the record is starting in January of 2008, when the first undercover operation occurred in this case, Daniel Apodaca was on the Internet, was using LimeWire, and had child pornography on his computer. Three months later, when the agents go to execute the search warrant, Daniel Apodaca was at that very time searching LimeWire for the term jailbait to collect more child pornography. We know that his collection consisted not only of pornographic images and videos on his computer, but that he was categorizing and collecting those images and burning them onto CDs to save them for later use. We also know from the record that his conduct in this case can be seen as escalating. Not only did Daniel Apodaca have child pornographic images, he also had child erotica, some 400 images and 30 videos of children that were not in lewd or lascivious poses, but just pictures of naked children. So he has in his collection first adult pornography, then child pornography, or sorry, child erotica or naked children, and then child pornography, including sadistic and masochistic images of children. Usually escalating. He collects them in that order? Is that what you're telling me? All of those things are present, Your Honor. There's nothing in the record to show. No, no. But you use the word escalating, and I'm trying to figure out what you mean by that. In terms of showing defendants' sexual interests and where he's going, he has all three of these items in his collection at a single point in time. But again, you're using the word going. Did he start collecting adult pornography, then pictures of naked children, and then child pornography? It's unclear from the record the dates of those downloads or when they were obtained, Your Honor. All we know at the time of the search in March of 08 is that all three of those things were present, and I think... So the word escalating may not be appropriate. So we don't know a sequence in which he's doing these things. I'm not questioning you at all as to what he had, but it's the word going and escalating that I'm questioning. I understand that, Your Honor, but I do think it's fair to say that when a defendant has naked images of children on his computer and then has images of... What do you mean by them? I'm sorry, Your Honor? You used the word them. Yeah. I mean, you keep telling me time sequence, but then you don't have a time sequence. Your Honor, let me just substitute the word also. Also. Has images of children in sexual positions, images of child sexual abuse, Your Honor. In my mind, that creates a clear escalation of what this defendant has in terms of... You have a... You and I are not speaking the same language. Escalation does not mean the same thing in your mouth that it means in mine. Escalation means he's moving from one thing to the other to a higher and higher level, more and more threatening, worse and worse, but then you keep telling me you don't know in what order he's doing these things. Your Honor, it's true in terms of dates and downloads we don't, but I think one of the issues in this case is what the defendant is saying is, I don't have a sexual interest in children. I might have this substantial collection of images of child sexual abuse, but I don't have a sexual interest in children, and I think that... You know what, counsel, I think you're trying to justify the lifetime sentence by arguing an argument that really you don't need to make, which is that the lifetime supervised release sentence was necessary because there was a pattern going on here that shows that he could be threatening to an actual child. And I've seen that argument in a lot of cases. I don't think you need to make that argument here. Your Honor, I respect your position. I will say that if I want to move from the nature of his collection on to some more defendant-specific characteristics, which is the fact that Daniel Apodaca is someone who has sought out positions of trust that involve kids. He, in 2002-2003, was a student teacher with middle school and high school students through a tutoring program. He then was a research assistant on a project that does not appear to involve contact with kids, but the nature of which was sleep problems in children with developmental disabilities. And then from there, he became a substitute teacher with high school students. So I think based on not only the type of collection that defendant had, the types of images that he had, and then also this defendant's desire to work with children as demonstrated by his past conduct all come together to show that there are facts here that warrant concern on the part of Judge Pregerson. I think that the third point— Isn't that just a lot of speculation, though? All this business about he went into the—he was a teacher and he did this. That gave him an opportunity to pursue other things, but there's no evidence that he did. I'm sorry, Your Honor. What do you mean in terms of contact offenses with children? Abuse, yeah. You're absolutely right. There's no evidence that when he performed any of those duties that he had any contact with children. That was inappropriate. But I think that the collection of facts are enough to warrant concern on the part of Judge Pregerson, and more importantly, to show that he did not abuse his discretion when viewed in light of the specific characteristics of Daniel Apodaca. I'd also note that the facts in this case are very similar to that in United States v. Daniels, in which this court upheld a lifetime period of supervised release for a defendant in possession of child pornography. And then lastly, I would note that this defendant can seek modification under 3583, and Judge Pregerson even went as far as to put it directly in the judgment and commitment order to say, the defendant is not precluded from seeking relief from this term of supervised release. Unless the court has any questions with regard to that issue or the other two issues raised in defendant's brief, I would submit. All right.  Thank you, counsel. Your Honor, when the government brings up facts that the district court did not cite as supporting anything in this case, it's very frustrating. Yes, Mr. Apodaca served as a substitute teacher at one point. He worked on a study that involved autistic children, though he had no contact with children in that study. It's not clear to me what the government's point is here. The fact is, the court did not cite any of that as a basis for justifying lifetime supervision in this case. And perhaps that may go to the procedural. Well, I have to say that I'm not sure it is a justification. He was apparently interested in child pornography, and the fact that he taught high school students seems to be entirely irrelevant to that. And I would be a little surprised if he had cited it in support of lifetime supervision. Exactly, Your Honor. What I'm really saying is the government can say that, but I'm not convinced that he considered it, thought it was relevant. But in the end, that comes out against you rather than against the government. Well, Your Honor, I guess that, again, it goes to perhaps the issue of whether the court gave a sufficient explanation for why lifetime supervision was necessary in this case, which goes to whether we have a procedural unreasonableness issue here. The fact is, the court only said the one line, it's just a way of saying let's be really safe and careful, without explaining why it was necessary in this case. Well, he said a lot more than that. I mean, that line was said, but he said a lot more than that. Well, he said a lot more than that with respect to the mitigating factors that justify such a reduced sentence. No, but the mitigating factors were going to the reduced sentence of incarceration. Well, he explained why we needed, why a reduced period of incarceration was appropriate here. The court did not give any explanation for why a lifetime period of supervision was necessary in this case, other than to say let's be better safe than sorry. You know, can I also say there was an issue in terms of government brought up the size of Mr. Apodaca's collection. I've handled many of these types of cases. He possessed 113 still images and 13 videos. This is not a very large collection compared to other child pornography possessors. Child erotica, there's nothing illegal about what he possessed. It's not clear to me what he possessed. I did not see those images. Child erotica is described often by probation if it's simply just a picture of a child, whether clothed or unclothed. So it's not clear to me what all these other images the government cites really means. And the government suggests that this is very similar to the Daniels case, which is a case I also argued in this court. The facts were very different. In Daniels, there was justification given in the pre-sentence report as to why it was necessary. The court discussed how, or the PSR reason that his interest in child pornography was over a number of years. We don't have that here. He had a specific desire to protect his illegal pornography collection. We don't have that here. And that there was an unknown clinical risk assessment. Well, we have a known clinical risk assessment here, which says there's no risk. So why is lifetime supervision necessary? You know, no risk is different from small risk. Small risk. I'll take that, Your Honor. So unless the court has any additional questions, I'll submit. Okay. Thank you, counsel. United States v. Apodaca is submitted, and the session of the court will be adjourned. Thank you. All rise. This court for this session stands adjourned.
judges: Cudahy, Wardlaw, Fletcher W.